## OLDIGES v OSBORNE et

Ohio Probate Court, Montgomery Co

Decided May 20, 1938

Holland & Holland, Dayton, for administrator.

By WISEMAN, J.

The plaintiff filed a petition for a declaratory judgment to determine the rights of several of the defendants in the real estate of the deceased.

The undisputed facts in this case show that Perry Lee Haller and Ivah Haller were husband and wife; that the husband died on November 13, 1925, intestate and without issue, possessed of the undivided one-half interest in real estate located in Montgomery county, State of Ohio; that said real estate passed to his surviving spouse, Ivah Haller, under §8574 GC, which provides for the passing of property which was acquired by purchase; that Ivah Haller never remarried, and died intestate and without issue on December 13, 1937, possessed of the interest in the piece of real estate which she inherited from her deceased husband; that Ivah Haller, at the time of her death, had three sisters and four brothers, living, and the daughter of a deceased sister; that Perry Lee Haller died leaving one brother, the children of two deceased sisters and the children of a half-sister.

These facts call for a construction of §10503-5 GC, commonly called the half and half statute, which so far as it is applicable to this case, provides as follows:

"* * * If there are no children or next of kin of deceased children, then such estate, real and personal, except for the one-half passing to the surviving spouse, if any, of such relict, shall pass and descend one-half to the brothers and sisters of such relict, or the next of kin of deceased brothers and sisters, and one-half to the brothers and sisters of the deceased spouse from whom such real estate or personal property came, or the next of kin of deceased brothers and sisters."

The court has been unable to find any opinion construing this section under the new Probate Code. The court does find opinions construing the former half and half statute (§8577 GC), and also opinions construing the words "brothers and sisters" as used in the general sections of descent and distribution.

As early as 1858, the Supreme Court of Ohio in **Cliver v Sanders, 8 Oh St 502,** held:

"Under the fourth subdivision of the first section of the statute of descents of 1835, the half-brothers and sisters of the ancestor are included in the words "brothers and sisters of such ancestor, * * *.""

The court, in commenting on the holding of the English courts on the subject, held that the English rule and its reason have no application whatever to our statute of descents. It followed the courts of this country in holding that:

"Half-brothers of an ancestor are included in and designated by brothers, wherever that term is used without limitation. We do not perceive anything in the terms or context of the statute under consideration to control or limit this general meaning."

In 1869, our Supreme Court again was required to construe the general sections of descent and distribution, and decided that the words "brothers and sisters" included half-brothers and sisters within the meaning of the section which provides for the descent of ancestral property. In the case of **White v White, 19 Oh St 531**, the court, on page 536, held:

"That the terms, 'brothers and sisters,' as used in the fifth clause of the act, comprehend half-brothers and half-sisters, was directly decided in **Oliver v Sanders, 8 Oh St 501**."

In 1877 there was enacted the first half and half statute, which was regarded as supplementary to the general sections of descent and distribution. Subsequent to the enactment of this section several cases arose in two Circuit Courts which finally reached the Supreme Court, in which the courts were required to determine whether or not half-brothers and half-sisters were included in the term "brothers and sisters" as used in that section.

The first case which the court wishes to cite is that of Martin v Falconer, decided by Judge Shauck of the Second Circuit Court in 1891 and recorded in 5 C. C. 584, the syllabus of which is as follows:

"The course of the moiety which passes to the brothers and sisters of a former deceased husband or wife under §4162 of the Revised Statutes, is controlled by the provisions of the statute to which it is supplementary, and it passes to the brothers and sisters of the whole blood, and if there

are no brothers and sisters of the whole blood, then to the brothers and sisters of the half blood."

In commenting on the policy of the state, relative to the passing of ancestral and non-ancestral property under the general sections of descent and distribution and the effect of the enactment of the supplementary section (Half and Half Statute), the court on page 585 say:

"The statutes in force at the time of the passage of the supplementary act, and long prior thereto, show the policy of the state to be that, excepting real estate ancestral in character, brothers and sisters of the whole blood take to the exclusion of those of the half blood. It is entirely clear that but for the supplementary act, the whole fund in the hands of the plaintiffs would go to the brothers and sisters of the whole blood of their intestate, to the exclusion of those of the half blood if there were such. That result would be inevitable in view of the provisions of the second and fourth sections of the prior statute; and in the construction of the supplementary statute, the same meaning must be given to the words "brothers and sisters" with respect to one moiety as with respect to the other. * * *

"* * * The purpose of that act was simply to limit the portion of the property which should go to the brothers and sisters of the intestate in the cases to which it applies. If the estate in controversy had gone to the brothers and sisters of John Deshler upon his death, unquestionably those of the half blood would have been excluded. No reason is suggested why a different course should be taken by the moiety which passes to them now.

"The supplementary statute and the former provisions referred to are in pari materia. A familiar and important rule with respect to such statutes is that they may be read together with a view to giving effect to all their provisions if that be possible * * *

"* * * Full effect is given to this provision if the moiety be held to pass to such brothers and sisters in the order established by Sections 2 and 4 of the former act; * * *"

It is very clear that Judge Shauck based his opinion on the fact that the half and half statute which was enacted in 1877, was regarded as supplementary to the general sections on descent and distribution,

and that the legislature had in mind at the time it enacted the half and half statute, the provisions of the general sections and the judicial interpretation of the words used in those sections, and, therefore, concluded that the half and half statute should be construed so as to pass the property to those who would have inherited had no half and half statute been enacted. The court held that the legislature did not intend to create a new class of takers from those designated in the general line of descent. In following this line of reasoning, the court construed the statute in such a way as to pass the property to brothers and sisters of the whole blood to the exclusion of brothers and sisters of half blood, for the simple reason that under the general section of descent and distribution, which controlled the passing of property of non-ancestral character, the brothers and sisters of the whole blood took the estate to the exclusion of the brothers and sisters of the half blood.

In 1892, the Eighth Circuit Court had a similar question before it in the case of Stone v Doster, which is reported in 7 C. C. 8, in which it was held:

"Under §4162 Revised Statutes, the distribution of 'one-half to the brothers and sisters of such deceased husband or wife from whom such personal or real estate came,' includes brothers and sisters of both the whole and half blood."

In his opinion, Judge Baldwin reviewed the statutory provisions in which the term "brothers and sisters" was used in the statute of descent and distribution, and cites the case of Oliver v Sanders and White v White, supra, with approval, and differed from the Circuit Court in the case of Martin v Falconer. On the question as to whether the half and half statute, being a supplemental act, should be construed so as to pass property to those who would have inherited under the general section of descent and distribution, the court, on page 14, say:

"* * * But it is said that in fact it was supplemental to Section 2 only, (referring to the non-ancestral statute) as it concerned only a case arising under it, and that the words 'brothers and sisters' should be construed according to the policy of the legislature in Section 2, now 4159, and as if it read:

"First (as in 3d of 4159), to the brothers and sisters of the whole blood; and,

"Second, if there are none, to brothers and sisters of the half blood (as in 4th of 4159).

"We do not think that such a presumption is called for. The legislature passed the act of 1877, to change 4159, for under Brower v Hunt, 18 Oh St 311, the 3d clause of 4159 would have given the estate in the case at bar to the brothers and sisters of the whole blood of Margaretta Stone, the intestate.

"There is no presumption then that 4159 was to stand, nor any reason why we should not fairly estimate the change by the words used in making it. The attention of the legislature could not have failed to be called to the continual use and effect of the phrases, 'brothers and sisters,' 'brothers and sisters of the whole blood' and 'brothers and sisters of the half blood.' To say also that brothers and sisters or their legal representatives should be read to mean brothers and sisters of whole blood, and, if there are none, to brothers and sisters of the half blood, violates one of the cardinal rules of construction, that when an estate goes to a class of persons each of the class take. This contention abandons the claim that the half blood are not brothers and sisters, for they can not take at all unless they are."

Again, on page 18, the court say:
"The policy of each legislature is to be determined by what it says, and when it passes an amendment or supplement, there is no presumption that it did not intend to change the law. There would be little work for legislatures if they did not change laws."

Again, on page 19, the court, in discussing the two methods of computing the degree of kindred, one under the Canon law and the other under the Civil law, observed that in Ohio the computation of the degree of kindred is made under the civil law, and that under the civil law, brothers and sisters of the whole and half blood are equally entitled to inherit.

The court, on page 21, states:

"* * * There is almost uniformity of opinion that where a statute provides for the inheritance of 'brothers and sisters' the term includes the half blood."
(Cases cited)

Both of these cases reached the Supreme Court, the opinion being reported under the title of Stembel v Martin, and Stone

v Doster, 50 Oh St 495, in which it is held by a divided court that:

"Upon the death of the relict without issue and intestate, seized of the property, it descends under §4162, of the Revised Statutes, one-half to the brothers and sisters of the whole blood of the former deceased husband or wife, or their representatives, if there be such, and if not, then to those of the half blood, and their representatives, and the other half to the brothers and sisters of the deceased relict, and their representatives, in the like order * * *."

The court held that the act of 1877 was passed to overcome the hardship and injustice resulting from the interpretation of the statutes in the case of **Brower v Hunt, 18 Oh St 311,** which held that the property which passed to a relict from a deceased spouse was non-ancestral property and upon the death of the intestate relict, descends to her heirs under the general section of descent and distribution governing non-ancestral property. In discussing the purpose of the act of 1877, the court, on page 519, say:

"The legislature appears rather to have accepted the rule establised by the decision referred to, (Brower v Hunt) and treating such property as non-ancestral, designed by the act in question, to secure in the future, one-half of the property to the relatives of the deceased husband or wife, and the other half to those of the relict. Such a division appeared to the legislative body to be just and equitable, and that, we think, was the practical end sought, and not the creation of a new class of ancestral estates.

"The act undoubtedly establishes a new line of succession, in that, it divides into two equal parts, the property which before its enactment went entirely to the brothers and sisters of the· intestate relict, and transmits one to the brothers and sisters of the former deceased husband or wife; but it prescribes no express rule as to how the brothers and sisters shall take. * * *"

On page 520, the court say:
"In this, as in many other instances, to arrive at the proper interpretation of the statute it must be considered in connection with other statutes on the same subject. The act in question became a part of the statutes of descent, and was enacted to supply some defect in then existing legis-

lation, or correct some evil growing out of it. * * * and must, therefore, be construed in its proper connection with those statutes, and so as to leave effective all of their provisions, not clearly changed or abrogated by it, keeping. in view the mischief which it was intended to remedy. * * *."

The gist of the court's opinion is found on page 520, wherein the court uses the following language:

"* * * The general policy pervading our statutes of descent, is, that the nearer of kin shall inherit, in preference to those more remote; and, when the subject of the inheritance is non-ancestral property, brothers and sisters of the whole blood of the intestate, are regarded as nearer of kin to the intestate than those of half blood. The former, therefore, inherit in preference to the latter. That rule prevailed when the supplemental act was passed, and remained unaffected by it. * * *"

Judge Minshall rendered a strong dissenting opinion. On page 526, he states:

"This section does not refer to §4159 for the mode of descent, but for the mode in which the property had been acquired, and for property so acquired, fixes, the descent by language of its own, that is plain and unambiguous; for the words, 'brothers and sisters,' have in law a definite meaning; they include brothers and sisters of the half, as well as of the whole, blood. On a mere conjecture that the legislature meant that the property should go according to the rules fixed by the section under which it had been acquired by the deceased relict, the court has rejected the plain meaning of the words adopted in the section fixing its descent, and substituted the language of the former section; that is to say, the section fixing the descent of non-ancestral property. although, as a matter of fact, the legislature treats it as quasi ancestral property. in sending one-half of it back to the brothers and sisters of the deceased consort from whom the estate came. * * *"

The court has cited and· reviewed at some length the two Circuit Court opinions and the Supreme Court opinion, to present the reasoning underlying the decisions rendered by both the Circuit Courts and the Supreme Court. While it is true that the Supreme Court finally settled the

question, it did so by a divided opinion. The Supreme Court, as late as 1909, in the case of Stockton v Frazier, 81 Oh St 227, was called upon to construe the words "brothers and sisters of such ancestors" as used in the fifth subdivision of §4158, Revised Statutes, which prescribes the order of descent of ancestral real estate, and followed with approval the case of Cliver v Sanders, supra, and held that within the meaning of that section half-brothers and half-sisters of the ancestors are included.

Except for the opinion in the case of Stembel v Martin, supra, the Supreme Court of Ohio has repeatedly interpreted the words "brothers and sisters" used in our statutes of descent and distribution to include both the whole and half blood.

The great weight of authority throughout the country is to the effect that the term "brothers and sisters" includes brothers and sisters of the half blood, except where there is some statutory limitation on the use of this term. 26 L. R. A. (N.S.) 603; 29 L. R. A. 541-542.

On January 1, 1932, a new probate code became effective in the state of Ohio. In the enactment of this code, unquestionably the legislature intended to, and did abolish in practically every instance, the distinction between ancestral and non-ancestral property. It accomplished this purpose by the enactment of one general section of descent and distribution. Sec 10503-4 GC. In subdivision six of this section, which provides for the passing of property to the brothers and sisters of the intestate, no distinction is made between brothers and sisters of the whole and half blood. In order that there might be no mistake as to the legislative intent, words were included in this section which indicated a determination on the part of the legislature that there should be no discrimination between brothers and sisters of the whole and half blood in passing property under this section. However, there was retained in the code the half and half statute, which was rewritten, (§10503-5) in which the term "brothers and sisters" is used without any limitation. The question now for the court to determine is whether the property which passes to the brothers and sisters under our present half and half statute passes to brothers and sisters of the half blood as well as the whole blood.

It will be observed that as a general proposition of law, it has been uniformly held, not only in the state of Ohio, but in other jurisdictions, that the term "brothers and sisters" in the absence of statutory provisions limiting the use and application of the term, includes half-brothers and sisters in the law applicable to the descent and distribution of property. In applying this principle of law, the court might easily conclude that since there is no limitation in our statute upon the use of the term "brothers and sisters," it would include brothers and sisters of the half blood as well as brothers and sisters of the whole blood.

This court has observed that the Supreme Court of Ohio, in Stembel v Martin, supra, in construing the words "brothers and sisters" as used in the half and half statute, as it then existed, to exclude brothers and sisters of the half blood, based its decision largely on the fact that there still existed in the statutory law of Ohio. a distinction between ancestral and non-ancestral property. Furthermore, the court held that when the property was non-ancestral in character it should be given to those who would inherit non-ancestral property under the general section of descent and distribution. Since the distinction between ancestral and non-ancestral property no longer exists under our new probate code, the basic principle on which the court rested its opinion is removed. This court, in applying the reasoning of the Supreme Court in Stembel v Martin, would arrive at an opposite conclusion due to a change in the statutes of descent and distribution.

It was stated by Judge Baldwin in the case of Stone v Doster, supra, "the policy of each legislature is to be determined by what it says, and when it passes an amendment or supplement, there is no presumption that it did not intend to change the law. There would be little work for legislatures if they did not change laws." Most certainly it was the purpose of the committee which drafted the probate code to definitely change the law on descent and distribution. The legislature acted favorably on the bill as presented, and reflected a legislative intent that the law, with respect to the descent and distribution of property in the state of Ohio, should not only be changed, but, also, should be simplified. It is very clear that it was the leglislative intent to abolish all of the old distinctions which then existed in the probate laws of the state of Ohio, which were considered hangovers from the old English feudal system, and which had no par-

ticular purpose to serve in the Ohio law.

This court is disposed to adopt the language used by Judge Minshall in his dissenting opinion in the case of Stembel v Martin, supra, holding that our present half and half statute fixes the descent of property "by language of its own, that is plain and unambiguous; for the words "brothers and sisters," have in law a definite meaning; they include brothers and sisters of the half, as well as brothers and sisters of the whole, blood." The words "brothers and sisters" have been thus construed not only by the courts in Ohio, but uniformly by the courts in other jurisdictions. Also, if the court were to refer to the general sections of descent and distribution to ascertain the meaning of the words "brothers and sisters" as used in the half and half statute, as did the Supreme Court in the case of Stembel v Martin supra, the court would come to the same conclusion because no distinction is made between brothers and sisters of the whole and half blood, with reference to their rights of inheritance under §10503-4 GC.

Prior to the adoption of the new Probate Code, the courts in the state of Ohio computed the degree of kindred under the civil law. Stone v Doster supra; Clayton et al v Drake et al, 17 Oh St 368. Under the civil law, brothers and sisters of the half blood were included in the term "brothers and sisters." This principle of law was written into the new Probate Code in §10503-2, which provides as follows:

"In the determination of interstate succession next of kin shall be determined by degrees of relationship computed by the rules of civil law."

If there should be any doubt as to whether the legislature intended that the term "brothers and sisters" as used in §10503-5 was to include brothers and sisters of half blood, that doubt is largely removed by the consideration of §10503-2. This court is of the opinion that §§10503-2, 10503-4 and 10503-5 are in pari materia and should be considered together in construing the term "brothers and sisters" as used in §10503-5.

This court, therefore, concludes, that it was the intent of the legislature that, since it did not place a limitation upon the use of the term "brothers and sisters" in

§10503-5 and since under §10503-4, brothers and sisters of the half blood participate equally with brothers and sisters of the whole blood, and since under §10503-2, the degree of kindred is computed by the rules of civil law, the term "brothers and sisters" as used in §10503-5 includes brothers and sisters of the half as well as whole blood.

Counsel will draw the proper entry.